IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY WILLIAM WANGEROW, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-19-2879 |
| AGENT COHEN, 6837, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

\*\*\*\*\*

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff Larry William Wangerow's above-captioned action against Maryland State Police ("MSP") Agent Cohen 6837, Trooper MSP Agent Tittle 6005, MSP Trooper Corpl. Agent Porter, MSP Commander Lt. Jeffrey Kirschner, David Harry Goldwater, Clara E. Campbell, Commissioner Montras, Commissioner Pollak, and Jason Ricke for events stemming from three separate arrests on November 1, 2017, December 24, 2018, and August 1, 2019. (ECF Nos. 1, 4). For reasons set forth herein, the Court will dismiss Wangerow's claims against Kirschner, Goldwater, Campbell, Montras, Pollak, and Ricke, and permit Wangerow's claims against Cohen, Tittle, and Porter to proceed.

## I. BACKGROUND

On October 1, 2019, Wangerow filed a Complaint together with a Motion to Proceed in Forma Pauperis. (ECF Nos. 1, 2). The Complaint, which named as Defendants Agent Cohen, Agent Tittle, Agent Porter, Lt. Kirschner, and Goldwater, alleged that members of the Maryland State Police violated Wangerow's First, Second, and Fifth Amendment rights through "violation of oath and stealing [his] liberty/time/property without just compensation." (Compl. at 4–5, ECF No. 1). Wangerow also complained generally of "unlawful arrests, unlawful charging, and unlawful detainment on at least 3 different occasions."[1] (Id. at 5).

On October 4, 2019, the Court granted Wangerow's Motion to Proceed in Forma Pauperis and ordered Wangerow to amend his Complaint to provide facts in support of his claims against Defendants. (ECF No. 3). Wangerow filed his Amended Complaint on October 28, 2019. (ECF No. 4). The Amended Complaint levied additional allegations against several new Defendants—Judge Clara E. Campbell, Commissioner Montras, Commissioner Pollak, and Cecil County Public Defender Jason Ricke—and supplied facts relating to three separate arrests that occurred on November 1, 2017, December 24, 2018, and August 1, 2019. The Court outlines Wangerow's allegations in detail below.[2]

---

[1] Wangerow is facing criminal motor vehicle charges in the Circuit Court for Cecil County, Maryland relating to a July 15, 2019 arrest in State of Maryland v. Larry William Wangerow, Case No. C-07-CR-10-001066 (Cecil Cty. Cir. Ct. filed Jul. 15, 2019). This case does not appear related to the instant Complaint.

[2] The pages in Wangerow's Amended Complaint are incorrectly numbered; therefore, references to page numbers are to those assigned by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

1. **October 18, 2017 incident**

On October 18, 2017, Agent Tittle arrested Wangerow pursuant to a warrant on charges of felony witness retaliation and misdemeanor telephone misuse and harassment. State of Maryland v. Larry William Wangerow, Case No. C-07-CR-17-001481 (Cecil Cty. Cir. Ct. filed Oct. 13, 2017)[3]; (see Am. Compl. at 5, ECF No. 4). Wangerow alleges that, since that time, Agent Tittle "always stops me to harass me [without] justification." (Am. Compl. at 6). Wangerow further states that Commissioner Montras did not set bond at the time of arrest, resulting in Wangerow's detention for a period of seventeen days. (Am. Compl. at 5). On November 2, 2017, the Circuit Court set bond at $50,000. Wangerow, No. C-07-CR-17-001481. Wangerow was released on bond the following day, November 3, 2017. Id.

2. **December 24, 2018 incident**

On December 24, 2018, Defendant Maryland State Trooper B. Porter arrested Wangerow on a misdemeanor charge of disorderly conduct. State of Maryland v. Larry William Wangerow, Case No. D-032-CR-19-060095 (Cecil Cty. Cir. Ct. filed Jan. 16, 2019); (see Am. Compl. at 9). Wangerow claims that Porter and three other officers "broke into" his house after he refused to talk to them outside, then arrested Wangerow and his daughter for disorderly conduct. (Am. Compl. at 9–10). Further, Wangerow alleges Porter handcuffed him, "dragged" him from his house, screamed in his face, "finger-punched"

---

[3] Because the Court "may properly take judicial notice of matters of public record." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the Court supplements Wangerow's Amended Complaint with information from Maryland Judiciary Case Search (http://casesearch.courts.state.md.us/casesearch/ last visited Nov. 22, 2019).

him in the chest, and threatened to ruin his life and drag out the time it would take to resolve his case. (Id. at 10). Wangerow also claims that an unnamed officer threatened to punch him in the face. (Id. at 10–11). In relation to his December 24, 2018 arrest, Wangerow also alleges that Maryland District Court Judge Clara E. Campbell engaged in a conspiracy to deny Wangerow's constitutional rights. (Id. at 11).

### 3. August 1, 2019 incident

On August 1, 2019, Agent Cohen arrested Wangerow on misdemeanor charges for possession of a firearm. State of Maryland v. Larry William Wangerow, Case No. C-07-CR-19-001252 (Cecil Cty. Cir. Ct. filed Aug. 21, 2019); (see Am. Compl. at 1). According to Wangerow, this incident was merely a misunderstanding—Wangerow had placed an antique gun in his back pocket while walking his dogs and forgot it was there. (Am. Compl. at 1).

## II. DISCUSSION

### A. Standard of Review

This matter is before the Court for evaluation pursuant to 28 U.S.C. § 1915(e)(2) (2018). Section 1915(e)(2) "'is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." McLean v. United States, 566 F.3d 391, 399 (4th Cir. 2009) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989). The Court must sua sponte dismiss claims filed in forma pauperis under Section 1915(e)(2) if the action is frivolous or malicious or fails to state a claim upon which relief may be granted. Michau v. Charleston Cty., 434 F.3d 725, 728 (4th Cir. 2005). Although the word "prisoner" is

occasionally used in 28 U.S.C. § 1915, the court must screen any complaint filed by a plaintiff, whether a prisoner or not, when he or she files in forma pauperis. See id. (affirming the district court's dismissal of non-prisoner's complaint, filed in forma pauperis, pursuant to Section 1915(e)(2) because the section "governs [in forma pauperis] filings in addition to complaints filed by prisoners").

Whether a complaint states a claim upon which relief can be granted under Section 1915(e)(2) is determined by the familiar standard for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003); Sumner v. Tucker, 9 F.Supp.2d 641, 642 (E.D.Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

**B.     Analysis**

    **1.     Lt. Jeffrey Kirschner**

Although Wangerow named Lt. Kirschner as a Defendant in his initial Complaint, neither the Complaint nor Amended Complaint set forth any personal participation by Defendant Kirschner in the alleged deprivation of Wangerow's constitutional rights.

5

Liability under 42 U.S.C. § 1983 (2018) attaches only upon personal participation by a defendant in the allegedly unconstitutional conduct. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Because Wangerow does not attribute any action to Lt. Kirschner that resulted in denial of his constitutional rights, Wangerow's claims against Lt. Kirschner must be dismissed.

To the extent Wangerow could argue that Lt. Kirschner is liable under a theory of supervisory liability, these claims must also fail. It is well established that the doctrine of respondeat superior does not apply to § 1983 claims. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

In his Amended Complaint, Wangerow baldly alleges that Kirschner "allow[ed] his agents to commit crime at will on the dates stated." (Am. Compl. at 16). However, nothing

in Wangerow's pleadings suggests that Kirschner had knowledge of the alleged constitutional violations or any other concerning behavior by Cohen, Tittle, or Porter, or that Kirschner failed to act in the face of such conduct. Accordingly, Wangerow cannot succeed on a claim against Kirschner premised on supervisory liability, and Kirschner is dismissed from suit.

### 2. David Harry Goldwater

Along with his Complaint, Wangerow submitted a summons form for David Harry Goldwater. (See ECF No. 1-3). The Clerk of the Court subsequently added Goldwater as a Defendant in this case. However, Wangerow clarifies in his Amended Complaint that Goldwater is merely a "witness" to Wangerow's allegations against Agent Cohen. (Am. Compl. at 15). Therefore, Goldwater is dismissed from suit.

### 3. Judge Campbell and Commissioners Montras and Pollak

In his Amended Complaint, Wangerow brings claims for damages against District Court Commissioner Montras for denying bond in connection with his October 18, 2017 arrest and for participating in a conspiracy to violate his civil rights; against Commissioner Pollak for denying bond in connection with his August 1, 2019 arrest and for participating in a conspiracy to deny his civil rights; and against Maryland District Court Judge Clara E. Campbell for participating in a conspiracy to deny his civil rights. Wangerow's claims must be dismissed because they are both factually insufficient and are prohibited by the doctrine of judicial immunity.

In general, claims for damages against judges are barred by the doctrine of judicial immunity. See Forrester v. White, 484 U.S. 219, 226–27 (1988) ("If judges were personally

liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits."). The doctrine of judicial immunity shields judges from monetary claims against them in both their official and individual capacities. Mireles v. Waco, 502 U.S. 9, 9–10 (1991) (per curiam). Judicial immunity is an absolute immunity; it does not merely protect judges from assessment of damages, but also protects a judge from damages suits entirely. Id. at 11. Moreover, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355–56 (1978); Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly).

Wangerow's claim for damages against Commissioners Montras and Pollak, who acted within the scope of their judicial authority with regard to an initial denial of bond, see Md. Code Ann., Cts & Jud. Proc. § 2-607 (c)(2) (2013), is prohibited by the doctrine of judicial immunity. Likewise, even if Wangerow's Amended Complaint plausibly alleged a conspiracy to deny his civil rights, Commissioner Montras, Commissioner Pollak, and Judge Campbell are immune from liability for actions undertaken as judicial officers. To the extent that Wangerow seeks damages from Judge Campbell based on judicial determinations made in connection with his December 24, 2018 arrest, Campbell is also

entitled to judicial immunity because such determinations are within the ambit of judicial officers. Therefore, Montras, Pollak, and Campbell are dismissed from suit.[4]

### 2. Public Defender Ricke

Wangerow brings a claim for damages against Cecil County Public Defender Jason Ricke, who represents Wangerow in connection with his August 1, 2019 arrest. Wangerow alleges that Ricke engaged in a conspiracy to deny Wangerow's civil rights. Like the judicial officers named above, Ricke is also entitled to immunity from suit because attorneys, including public defenders, do not act under color of state law when performing a lawyer's function in a criminal proceeding. Deas v. Potts, 547 F.2d 800, 800 (4th Cir. 1976); Hall v. Quillen, 631 F.2d 1154, 1155–56 (4th Cir. 1980); Polk Cty. v. Dodson, 454 U.S. 312, 453–54 (1981). Further, while an attorney who conspires with a state official to violate constitutional rights does act under color of state law, evidence of the conspiracy is required. Tower v. Glover, 467 U.S. 914, 920 (1984); Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (holding that plaintiff must make more than naked assertion of conspiracy). Wangerow fails to plead any facts supporting his allegation that Ricke engaged in a conspiracy. Thus, Wangerow's claim against Ricke must be dismissed.

---

[4] In his Amended Complaint, Wangerow also alleges wrongdoing by an "unknown judge" involved in handling the case stemming from Wagnerow's October 18, 2017 arrest and by the "agent Prosecutor attorney and District Court Clerk" involved in the proceedings subsequent to Wangerow's December 24, 2018 arrest. For the reasons the Court must dismiss the claims against Montras, Pollak, and Campbell, the Court will also dismiss these unnamed judicial officers from suit.

### 6. Agents Cohen, Tittle, and Porter

Wangerow alleges that Agents Tittle and Porter deprived him of his constitutional rights during his arrests on October 18, 2017 and December 24, 2018, respectively. Wangerow also alleges that Agent Cohen violated his Second Amendment rights by arresting him on August 1, 2019 for possessing a firearm because an antique gun is not considered a firearm under federal law.

Wangerow's allegations of unlawful arrest against Agents Tittle, Porter, and Cohen may state cognizable constitutional claims. In an abundance of caution, the Court will permit Wangerow's claims against Defendants Tittle, Porter, and Cohen to proceed to service of process and response.

### III. CONCLUSION

For the foregoing reasons, the Court will dismiss Wangerow's claims against Lt. Jeffrey Kirschner, David Harry Goldwater, Clara E. Campbell, Commissioner Montras, Commissioner Pollak, and Jason Ricke. A separate Order follows.

Entered this 22nd day of November, 2019.

                                                _____/s/_____
                                                George L. Russell, III
                                                United States District Judge